# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

May 7, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**LESLI GORDON-BUTTERMORE,**
**Claimant Below, Petitioner**

**vs.)   No. 17-1118**  (BOR Appeal No. 2051826)
                    (Claim No. 2015019977)

**MONONGALIA HEALTH SYSTEM, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Lesli Gordon-Buttermore, by Christopher Wallace, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Monongalia Health System, Inc., by Steven Wellman, its attorney, filed a timely response.

The issue on appeal is the payment of temporary total disability and medical treatment. On August 14, 2015, the claims administrator closed the claim for temporary total disability benefits. On December 7, 2015, the claims administrator denied authorization for a repeat electromyography. The Office of Judges affirmed the August 14, 2015, closure of temporary total disability benefits and reversed the claims administrator's December 7, 2015, denial of authorization for a repeat electromyography in its February 15, 2017, Order. The Order was affirmed by the Board of Review on November 22, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Gordon-Buttermore, a nurse, was injured on December 19, 2014, when a patient grabbed, squeezed, and twisted her left hand while she was trying to put a cervical collar on him. Ms. Gordon-Buttermore was treated at Ruby Memorial Hospital where she was diagnosed with a left wrist and forearm strain. On December 27, 2014, she was treated at MedExpress where she was diagnosed with a left wrist sprain and possible underlying carpal tunnel syndrome. The claims administrator held the claim compensable for a left wrist sprain on February 2, 2015.

1

Electromyography and nerve conduction studies performed on March 17, 2015, showed no evidence of cervical radiculopathy, generalized neuropathy, or myopathy. The study was normal. Ms. Gordon-Buttermore had a left wrist MRI on April 29, 2015, which was suspicious for a capsular tear or incomplete tear of the ulnar collateral ligament and a degenerative signal within the ulnar triangular fibrocartilage complex with no discrete tear

P. Kent Thrush, M.D., performed an independent medical evaluation on May 7, 2015. He noted the accepted diagnosis was a wrist sprain and the most recent MRI showed a possible capsular tear of the radiocarpal joint or an incomplete tear of the ulnar collateral ligament. In his opinion, the wrist sprain was due to the work injury. Dr. Thrush recommended a referral to Jaiyoung Ryu, M.D.

Chad Micucci, M.D., treated Ms. Gordon-Buttermore on May 8, 2015, and diagnosed triangular fibrocartilage complex and associated ligament tears. Dr. Micucci recommended sending her to Patrick McCulloch, M.D., a hand specialist, as he was not sure the diagnosis and MRI fit Ms. Gordon-Buttermore's complaints on examination.

On July 14, 2015, the claims administrator suspended the claim for temporary total disability benefits as Dr. Thrush opined that Ms. Gordon-Buttermore was capable of working in a light/modified duty capacity which Monongalia Health System, Inc., was able to accommodate. On August 14, 2015, the claims administrator closed the claim for temporary total disability benefits as sufficient medical evidence showing Ms. Gordon-Buttermore remained disabled had not been received.

Ms. Gordon-Buttermore was seen for a consultation by William Dahl, M.D., on August 26, 2015. Ms. Gordon-Buttermore complained of pain along the radial aspect of the base of her thumb, as well as numbness and tingling in the ring and small fingers of the left hand. Dr. Dahl noted the MRI arthrogram showed minimal degenerative changes within the triangular fibrocartilage complex, but no pathology to account for Ms. Gordon-Buttermore's symptoms. Dr. Dahl diagnosed left wrist deQuervain's tenosynovitis, left ulnar neuropathy, and left wrist pain. He recommended a new electromyography of the left upper extremity due to Ms. Gordon-Buttermore's worsening symptoms of numbness and tingling. He also recommended a brace for the left hand and occupational therapy.

On October 2, 2015, Sushil Sethi, M.D., performed an independent medical evaluation. He noted that Ms. Gordon-Buttermore had received more than nine months of active intervention as well as electromyography and nerve conduction studies that were normal. The MRI arthrogram showed degenerative findings only, no traumatic findings. Dr. Sethi opined that Ms. Gordon-Buttermore had non-specific, subjective pains that could not be verified upon examination. In his opinion, she had reached a plateau, which was stable. He did not believe any "fundamental, functional, or physiological" changes could be expected in spite of ongoing treatments or therapies. Dr. Sethi believed Ms. Gordon-Buttermore was able to return to work with no restrictions.

A patient status report dated October 6, 2015, lists diagnoses of left deQuervain's tenosynovitis and left ulnar neuropathy. Ms. Gordon-Buttermore's work status was listed as light duty with restrictions limiting lifting with the left arm to under ten pounds. The treatment plan included bracing, occupational therapy, and a new electromyography of the left upper extremity. On October 7, 2015, Dr. Dahl noted that the electromyography request had been denied. Ms. Gordon-Buttermore had not returned to work, although her work had provided her with a job with restrictions that she did not accept. The deQuervain's brace seemed to help. Dr. Dahl assessed left deQuervain's tenosynovitis, left cubital tunnel syndrome, and left wrist pain.

The claims administrator denied authorization for a repeat electromyography on December 7, 2015. On January 5, 2016, Nicole Linger, an employee health coordinator for Monongalia Health System, Inc., submitted an affidavit in which she averred that a modified duty position was secured for Ms. Gordon-Buttermore on July 10, 2015. The light duty assignment included answering phones, data entry, and sending faxes as needed. Ami Guidi, who coordinated return to work for injured employees at that time, was unable to reach Ms. Gordon-Buttermore on July 10, 2015, or July 13, 2015.

Ms. Gordon-Buttermore testified via deposition on August 15, 2016, that she worked as an emergency room nurse at Monongalia General Hospital. She treated with Dr. Micucci who referred her to physical therapy and ordered an electromyography, MRI, and an MRI arthrogram. She had been wearing a brace that immobilized her wrist and thumb. Her temporary total disability benefits were suspended in July of 2015 after a job offer was allegedly made. When the job offer was made, Dr. Micucci had not released her to return any type of work. She was offered a position in the medical records department in which she would receive telephone calls from patients requesting copies of their medical records. This would require computer work, including typing, answering phones, sending faxes, and working thirty-five hours per week. This exceeded the restrictions from Dr. Thrush in that it was too many hours. Dr. Dahl, the hand specialist, changed her brace and advised her she could work as many hours as she needed to. The brace completely covered her wrist and immobilized her thumb. She was unable to hold a pen or pencil with her left hand.

On February 15, 2017, the Office of Judges affirmed the claims administrator's August 14, 2015, denial of the repeat electromyography and reversed the claims administrator's December 7, 2015, decision regarding temporary total disability benefits. The Office of Judges addressed the issue of the repeat electromyography first. It found that Dr. Dahl's medical records from August 26, 2015, and October 7, 2015, showed the electromyography was necessary for left cubital tunnel syndrome or left ulnar neuropathy. Neither of these conditions was compensable. Therefore, the Office of Judges determined that while the electromyography may have been necessary treatment, it was not for the compensable diagnosis.

The Office of Judges then turned to the issue of temporary total disability. It noted that the temporary total disability benefits were suspended on July 14, 2015, based on the report of Dr. Thrush and the claim was then closed for temporary total disability benefits on August 14, 2015, because there was insufficient medical evidence that Ms. Gordon-Buttermore remained

disabled. The Office of Judges noted that Ms. Gordon-Buttermore testified she had to wear a brace that would have interfered with her ability to use a keyboard or write. Dr. Dahl had provided work restrictions of no lifting more than ten pounds and use of the brace at work. Ms. Gordon-Buttermore testified that she was told by her employer that there were no jobs available on August 26, 2015. The Office of Judges found no evidence that Ms. Gordon-Buttermore was offered a job after August 26, 2015. It found that Ms. Gordon-Buttermore's desire to see a hand specialist before returning to work was not unreasonable. Therefore, the temporary total disability benefits should not have been suspended on July 14, 2015. Ms. Gordon-Buttermore stated in her testimony that she spoke with an employer representative after her August 26, 2015, appointment with Dr. Dahl and was told she could start working and the position could be modified as needed. The Office of Judges found that Ms. Gordon-Buttermore refused to accept this job and there was no good cause for her rejection of the modified position. The Office of Judges found the claim would have been properly closed for temporary total disability benefits as of August 26, 2015. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on November 22, 2017.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The medical evidence supports the Office of Judges' finding that the electromyography was not requested for a compensable condition. As such, it was properly denied. Additionally, Ms. Gordon-Buttermore was not entitled to temporary total disability benefits beyond the date on which she refused to return to a modified duty job. The Board of Review did not err in finding that the proper date for the closure of the claim for temporary total disability was August 26, 2015.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: May 7, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker